# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| RODREKUS WATSON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CV624-028 |
| BRIAN ADAMS, *et al.*, | ) ) ) |
| Defendants. | ) ) |

## ORDER AND REPORT AND RECOMMENDATION

The Court previously granted *pro se* prisoner Rodrekus Watson's request to pursue his 42 U.S.C. § 1983 case *in forma pauperis*. *See* doc. 6. Although, as discussed below, he did not return the required forms timely, he requested an extension of his deadline, doc. 7, and the completed forms arrived the next day, docs. 8 & 9. Watson's Motion states that he did not receive the forms in sufficient time to ensure that the Court would receive them by the deadline. Doc. 7 at 1-2. Indeed, it did not. *See generally* doc. 6 (requiring forms be returned by July 8, 2024). The Court will, however, **GRANT** him a retroactive extension of the deadline. Doc. 7. *See* Fed. R. Civ. P. 6(b)(1)(B). Since the completed forms have now arrived, docs. 8 & 9, he has sufficiently complied with the Court's prior Order, doc. 6. The

Court, therefore, proceeds to screen his Complaint, pursuant to 28 U.S.C. § 1915A.

The Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), so allegations in the Complaint are taken as true and construed in the light most favorable to the plaintiff. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal). Because Plaintiff is proceeding *pro se*, his pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *See Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

Watson alleges that he was placed in segregated confinement when he arrived at Smith State Prison. Doc. 1 at 2. He complained about the assignment, but former Warden Adams rudely rejected his complaints. *Id.* He alleges Adams subsequently asked that Watson "give him 50 thousand [sic, presumably dollars] to be let into General Population, one day, on the way to the shower." *Id.* Watson "declined his offer . . . ." *Id.* Although his factual allegations are not entirely clear, it appears that he

2

arrived at Smith State Prison in 2021, *id.* at 7. It is, therefore, unclear how much time elapsed between the allegations about his assignment and Adams' comment and the other events alleged.

The clear focus of Watson's Complaint begins with an incident on July 8, 2022. *See* doc. 1 at 2. He alleges that several inmates acquired an unidentified officer's keys. *Id.* They used those keys to gain access to his cell. *Id.* They then "robbed [him], assaulted [him, and] sliced [his] hand open." *Id.* He was taken to a hospital on July 9 when he, apparently, received unspecified treatment. *Id.* He next alleges that he had two sessions of physical therapy in September 2022. *Id.* However, after those two sessions, further sessions were cancelled. *Id.* He did more physical therapy at "the end of the 1st quarter 2023." *Id.* However, after two more sessions, further sessions were again cancelled. *Id.* He alleges that "the physical therapy man," informed him that he would need surgery "to regain range of motion in [his] hand." *Id.* at 6. He continues to have limited range of motion in his hand. *Id.* He seeks monetary relief, "a hand surgeon to repair [his] hand," and release from prison. *Id.* at 3.

Watson has also included a request for court-appointed counsel in his request for relief. *See* doc. 1 at 3. He requests an attorney "because

3

[he does not] know how to litigate, they don't run law library [sic], [he does not] know about medical issues [and] how to litigate them [and] the administration has deliberately tried to cover the incident up[, and he will] need [a] medical expert for trial." *Id.*   First, Watson has no constitutional right to counsel in this civil case. *Wright v. Langford*, 562 F. App'x 769, 777 (11th Cir. 2014) (citing *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999)). "Although a court may, pursuant to 28 U.S.C. § 1915(e)(1), appoint counsel for an indigent plaintiff, it has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances."   *Id.* (citing *Bass*, 170 F.3d at 1320). Appointment of counsel in a civil case is a "privilege that is justified only by exceptional circumstances, such as where the facts and legal issues are so novel or complex as to require the assistance of a trained practitioner."   *Fowler v. Jones*, 899 F.2d 1088, 1096 (11th Cir. 1990) (citing *Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987), and *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)).   General lack of education, including legal education, is also not a sufficient basis to require appointment of counsel. *See, e.g., Brown v. Wilcher*, 2021 WL 411508, at *1 (S.D. Ga. Feb. 5, 2021).   Moreover, this Court has

4

repeatedly recognized that "prisoners do not receive special consideration [for appointed counsel] notwithstanding the challenges of litigating a case while incarcerated." *Hampton v. Peeples*, 2015 WL 4112435, at *2 (S.D. Ga. July 7, 2015).

The Eleventh Circuit has explained that "the key" to assessing whether counsel should be appointed "is whether the *pro se* litigant needs help in presenting the essential merits of his or her position to the court. Where the facts and issues are simple, he or she usually will not need such help." *McDaniels v. Lee*, 405 F. App'x 456, 457 (11th Cir. 2010) (quoting *Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993)). As Watson's Complaint, while not sufficient to state a claim, is clear and cogent, the Court does not find any "exceptional circumstance" that warrants appointment of counsel. *Fowler*, 899 F.2d at 1096. Watson's request for appointed counsel is, therefore, **DENIED**.

Watson has also moved for injunctive relief, in the form of release or transfer to another prison or halfway house.[1] *See* doc. 10. He alleges that inmates at Smith State Prison have been discovered to possess

---

[1] The Motion was not signed. *See* doc. 11. The Clerk has directed him to correct that deficiency. *See id.* If he does not, the Federal Rules require the Court strike the pleading. *See* Fed. R. Civ. P. 11(a). If the Motion is stricken pursuant to Rule 11(a), the recommendation below should be **DISMISSED** as moot.

5

firearms and staff supervision of inmates is inadequate. *Id.* at 1-2. He, therefore, contends that the facility is not safe. *Id.* at 2. "In this Circuit, a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites"; namely (1) a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury unless the injunction issues; (3) that the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotation marks, alterations, and citations omitted). "[G]ranting or denying a . . . preliminary injunction rests within the discretion of the district court." *Hernandez v. Inch*, 2021 WL 5361086, at *1 (N.D. Fla. Oct. 8, 2021) (citing *Carillon Imps., Ltd. v. Frank Pesce Int'l Grp. Ltd.*, 112 F.3d 1125, 1126 (1997)).

This Court has denied similar requests for preliminary injunctions seeking "transfer . . . to a 'non-violent' . . . prison[ ]." *See Harris v. Deal*, 2016 WL 7856418, at *1 (S.D. Ga. Dec. 13, 2016). There, as here, "Plaintiff has not addressed any of the four requirements for obtaining injunctive

6

relief, much less met his burden of persuasion as to those requirements." *Id.* Moreover, as the Court noted, "federal courts should refrain from unwarranted interference in the day-to-day operations of state prisons." *Id.* at *2 (citing *Prieser v. Rodriguez*, 411 U.S. 475, 491-92 (1973)). Finally, "it is well settled that [a prisoner] has no constitutional right to confinement in a particular prison . . . ." *Alverson v. Mills*, 2020 WL 1979570, at *2 (M.D. Ala. Mar. 17, 2020), *adopted* 2020 WL 1975374 (M.D. Ala. Apr. 24, 2020) (denying "motion for preliminary injunction[ ] seeking a transfer to a less violent dorm and to [another prison]."). Watson's request for "immediate injunctive relief," should, therefore, be **DENIED**. Doc. 10.

Having disposed of Watson's motions, the Court proceeds to consider the allegations in his Complaint. Charitably construed, the Complaint implicates three distinct claims, but does not allege sufficient facts to support any of them. First, the allegations concerning Watson's segregated confinement, without a prior disciplinary hearing, implicates a Fourteenth Amendment due process claim. Second, his allegations concerning his assailant's acquisition of a guard's keys implicates a failure-to-protect claim. Finally, his allegations concerning cancellations

of his physical therapy implicates a deliberate-indifference-to-medical-needs claim. Those claims, and the defects in the Complaint's assertion of them, are discussed below.

### A. Fourteenth Amendment Due Process

The Fourteenth Amendment's Due Process Clause "does not directly protect an inmate from changes in the conditions of his confinement" or create a constitutionally protected interest "'in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters.'" *Chandler v. Baird*, 926 F.2d 1057, 1060 (11th Cir. 1991) (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). Generally, "[w]hen an inmate is placed in conditions more restrictive than those in the general prison population, whether through protective segregation . . . or discretionary administrative segregation, his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (per curiam). Thus, to state a due process claim, a prisoner must allege more than just confinement in segregation without due process. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). The prisoner

must also show that the nature of his confinement (*i.e.*, the conditions or duration) gives rise to a protected liberty interest and otherwise entitles him to some measure of due process. *See id.* at 486-87.

If a prisoner establishes a liberty interest, as discussed above, the court must then consider whether the defendants provided the prisoner sufficient due process, considering the following three factors identified by the United States Supreme Court in *Mathews v. Eldridge*: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976); *see also Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005) (applying the *Mathews v. Eldridge* framework to Ohio prisoners' due process right to avoid assignment to the state "Supermax" facility).

Here, Plaintiff has not provided enough details about his Tier II confinement in relation to confinement in general population for the Court to determine whether the nature of his Tier II confinement is particularly

9

harsh as compared to those conditions he would be subject to in general population. *See* doc. 1 at 2. As discussed below, he will have an opportunity to amend his Complaint to clarify his allegations.

### B. Failure to Protect

To succeed on an Eighth Amendment deliberate-indifference claim, a plaintiff-inmate must show: (1) that the alleged deprivation is, "objectively, 'sufficiently serious,'" and (2) the defendant-official acted with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 834, 839 (1994) (internal citation omitted). To establish subjective recklessness, the plaintiff must show "that the defendant was actually, subjectively aware that *his own conduct*," whether that "conduct" be action or inaction, "caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, ___ F.4th ___, 2024 WL 3354963, at *7 (11th Cir. July 10, 2024) (emphasis added). Even if a defendant was aware of a substantial risk to a plaintiff-inmate's health or safety, if the defendant "'responded reasonably to the risk,'" he cannot be found liable under the Eighth Amendment. *Id.* (quoting *Farmer*, 511 U.S. at 844-45). Courts evaluate whether a defendant responded reasonably to a substantial risk to the plaintiff's health or safety

objectively. *Id.* at *8 (citing two decades of Eleventh Circuit precedent) (Jordan, J., concurring).

For decades, the Eleventh Circuit has described a "more than mere negligence" or "more than gross negligence standard" in determining whether an official acted with deliberate indifference to a substantial risk to an inmate's health or safety. *See Wade*, 2024 WL 3354963, at *2. On July 10, 2024, in *Wade v. McDade*, the Eleventh Circuit determined that those standards were inconsistent with the Supreme Court's decision in *Farmer v. Brennan* and clarified that courts in this circuit should apply the subjective recklessness standard articulated above. *See generally id.* To the extent prior Eleventh Circuit deliberate-indifference cases are not inconsistent with *Wade*, "they should continue to be cited as binding precedent." *Id.* at *10 (Jordan, J., concurring).

Watson has not alleged sufficient facts concerning the acquisition of keys by the inmates who assaulted him to state a failure-to-protect claim. The Court assumes, without deciding, that permitting inmates to gain access to keys to cells and other areas of a prison presents an objectively serious risk. It might also credit Watson's implicit allegation that permitting the unidentified inmates to gain access to the keys was

11

causally related to his injury. Watson has not, however, alleged any fact that even suggests that any prison employee or official was anything more than negligent in allowing the unidentified inmates to gain access to the keys. Doc. 1 at 2 (alleging that the inmates who assaulted him "end up with a officer keys [sic]."). Negligence—if, for example, the responsible employee or official left the keys unattended—would not create the subjective awareness of the risk required to support his claim. *See, e.g., Wade*, 2024 WL 3354963, at *7 (to show recklessness, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm . . ."). As above, Watson will have an opportunity to amend his claim.

### C. Medical Needs

"Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). To establish an Eighth Amendment claim based on inadequate medical care, a plaintiff must allege facts sufficient to show that the defendants engaged in "acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*,

429 U.S. 97, 106 (1976). The objective component to deliberate indifference in this context, *see Wade*, 2024 WL 3354963, at *7, requires that plaintiff allege an objectively "serious medical need[–]one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention," *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (internal quotations and citations omitted). Second, plaintiffs must show that the defendants' acted with deliberate indifference to his serious medical need by demonstrating that the defendants were subjectively aware that their own inaction caused a substantial risk of serious harm and that the defendants unreasonably disregarded that risk. *Wade*, 2024 WL 3354963, at *7. If the defendants acted reasonably, they cannot be held liable under the Eighth Amendment. *Id.*

The Court assumes, without deciding, that the hand injury that Watson suffered in the assault was an objectively serious medical need. However, Watson alleges that he received medical treatment at a hospital the day after he suffered that injury. *See* doc. 1 at 2. To the extent that the "medical need" at issue is the persistent limited mobility, it is not clear that that condition is an "objectively serious medical need." *See, e.g., Allen*

13

*v. Stieve*, 2011 WL 4479595, at *3 (W.D. Mich. Sept. 26, 2011) ("Limited mobility in Plaintiff's hand does not, in itself, present a need for urgent medical treatment, much less a risk of serious harm to Plaintiff."). However, the Court cannot determine whether the physical therapy was prescribed by a physician when Watson was treated after his injury. If it were, failure to provide such prescribed treatment could constitute deliberate indifference. *See, e.g., Qamar v. C.I.A.,* 489 F. App'x 393, 396 (11th Cir. 2012) (citing *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir. 1988)) ("[P]rison officials act with deliberate indifference if they knowingly interfere with treatment prescribed by a physician."). Watson's disagreement with medical staff that his condition requires more aggressive treatment would not be sufficient to state a claim. *See, e.g., Keohane v. Fla. Dept. of Corrs. Sec'y,* 952 F.3d 1257, 1266 (11th Cir. 2020). Since Watson's allegations are not sufficiently clear to support a deliberate indifference claim, he will be afforded an opportunity to amend his Complaint to clarify them.

Although the Complaint fails to state any claim, Watson is entitled to an opportunity to amend before dismissal. *See, e.g., Jenkins v. Walker*, 620 F. App'x 709, 711 (11th Cir. 2015) ("Generally, when a more carefully

14

drafted complaint might state a claim, a district court should give a *pro se* plaintiff at least one chance to amend the complaint before the court dismisses the action."). Accordingly, Watson is **DIRECTED** to submit an Amended Complaint clarifying his allegations by no later than August 7, 2024. To facilitate his preparation of the Amended Complaint, the Clerk is **DIRECTED** to send him a blank Form Pro Se 14 (Complaint for Violation of Civil Rights (Prisoner)). Watson is advised that his amended complaint will supersede the current operative complaint and therefore must be complete in itself. *See Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982). Watson is further advised that failure to timely submit his amended complaint may result in a recommendation that this case be dismissed for failure to obey a court order or failure to prosecute. *See* Fed. R. Civ. P. 41(b).

In summary, Watson's Motion for Extension of Time to submit the forms required for him to proceed *in forma pauperis* is **GRANTED**. Doc. 7. His request for appointed counsel, included in his Complaint, is **DENIED**. His request for injunctive relief should be **DENIED**. Doc. 10.

15

He is **DIRECTED** to amend his Complaint to clarify his allegations, as discussed above, by no later than August 7, 2024.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

Finally, the Court must assess Watson's filing fee. *See* 28 U.S.C. § 1915(b). Watson's Prisoner Trust Account Statement indicates average monthly deposits of $56.33. Doc. 9 at 1. He, therefore, owes an initial partial filing fee of $11.27. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," based upon average deposits to or balance in a prisoner's account, under a specific 20 percent formula). His account custodian shall set aside 20 percent of all future deposits to the account, then forward those funds to the Clerk each time the set aside amount reaches $10, until the balance of the Court's $350 filing fee has been paid in full. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall

be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.[2]

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 24th day of July, 2024.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[2] The Clerk is **DIRECTED** to send this Order to plaintiff's account custodian immediately, as this payment directive is nondispositive within the meaning of Fed. R. Civ. P. 72(a), so no Rule 72(b) adoption is required. In the event plaintiff is transferred to another institution, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this Order.